# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE WESTERN DIVISION

JEFFREY L. HENRY,

      Petitioner,

v.                                  No. 2:18-cv-02839-MSN-tmp

GRADY PERRY,

      Respondent.

---

## ORDER OF DISMISSAL,
## ORDER DENYING CERTIFICATE OF APPEALABILITY,
## ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH,
## AND
## ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

---

Before the Court are the Petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody filed by Petitioner Jeffrey L. Henry, Tennessee Department of Correction ("TDOC") register number 546504, who is confined at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee, (ECF No. 1), the Answer filed by Respondent, (ECF No. 11), Petitioner's Reply (ECF No. 15-3) and Respondent's Sur-Reply (ECF No. 22.)  As discussed below, the issues Petitioner raises in the habeas petition fall into two categories: (1) whether the state court identified and applied the correct federal legal principles and (2) whether the claim is procedurally defaulted.  For the following reasons, the Petition is **DISMISSED**.

## I.      <u>STATE COURT PROCEDURAL HISTORY</u>

On January 12, 2015, Petitioner Jeffrey L. Henry entered an *Alford* plea to three counts of aggravated sexual battery.  (ECF No. 10-1 at PageID 75.)  The trial court sentenced Henry to an effective sentence of twenty years in prison.  (ECF No. 10-1 at PageID 77–79.)

On September 22, 2016, Petitioner Henry filed a petition for writ of error coram nobis based on alleged newly discovered evidence.  (R., Pet., ECF No. 10-1 at PageID 80-93.)  On November 1, 2016, the trial judge dismissed the petition for failure to state a claim.  (R., Order, ECF No. 10-1 at 116–18.)  Petitioner appealed.  (ECF No. 10-1 at PageID 119–20.)  The Tennessee Court of Criminal Appeals ("TCCA") affirmed.  *Henry v. State*, No. W2016-02435-CCA-R3-ECN, 2017 WL 5485494 (Tenn. Crim. App. Nov. 14, 2017), *perm. app. denied* (Tenn. May 17, 2018).

On October 6, 2015, Henry filed a *pro se* petition in Shelby County Criminal Court pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101–122.  (ECF No. 10-7 at PageID 189–202.)  On February 26, 2016, post-conviction counsel filed an amended petition.  (ECF No. 10-7 at PageID 215–23.)  On July 12, 2016, post-conviction counsel filed a second amended petition.  (R., Second Am. Pet., ECF No. 10-7 at PageID 224–32.)  The post-conviction court conducted an evidentiary hearing and denied relief orally and by order entered August 19, 2016.  (ECF No. 10-7 at PageID 234–43.)  Henry appealed.  (ECF No. 10-7 at PageID 245.)  The TCCA affirmed.  *Henry v. State*, No. W2016-01821-CCA-R3-PC, 2018 WL 522435 (Tenn. Crim. App. Jan. 23, 2018), *perm. app. denied* (Tenn. May 17, 2018).

2

## II.     FEDERAL COURT PROCEDURAL HISTORY

On December 16, 2018, Petitioner Henry filed this Petition pursuant to 28 U.S.C. § 2254 challenging his state conviction. (ECF No. 1.) On February 12, 2019, the Court directed Respondent to file a response to the Petition. (Order, ECF No. 4.) On May 8, 2019, Respondent filed the state court record. (ECF No. 10.) On May 10, 2019, Respondent filed an answer to the Petition. (ECF No. 11.)

### A.     Federal Habeas Issues

In the petition, Henry raises the following issues:

1. Trial counsel provided ineffective assistance by failing to communicate a defense strategy. (Pet., ECF No. 1 at PageID 5.)

2. Trial counsel provided ineffective assistance by failing to challenge Petitioner's statement to police. (*Id.*)

3. Trial counsel provided ineffective assistance by failing to fully explain Petitioner's guilty plea and sentence. (*Id.*)

4. Trial counsel provided ineffective assistance by coercing Petitioner to enter his guilty plea. (*Id.*)

5. Trial counsel provided ineffective assistance by failing to explain the evidence to Petitioner. (*Id.*)

6. Trial counsel provided ineffective assistance by failing to conduct an adequate investigation. (*Id.*)

7. Petitioner's Due Process rights were violated when the State failed to turn over exculpatory evidence in violation of *Brady v. Maryland, 373 U.S.* 83, 87 (1963). *Id.* at PageID 4, 22.)

Issues 1, 3, 5, and 6 were reviewed by the TCCA during the post-conviction appeal and are exhausted. (ECF No. 10-10 at PageID 382–84.) Issues 2, 4, and 7 have not been reviewed by the TCCA and are procedurally defaulted.

3

III.   **THE EVIDENCE**

The parties stipulated to a factual basis for the charges as summarized by the prosecutor during Henry's change of plea hearing:

> The facts of indictment 13-06323 are as follows:  The victim, C.P.,[1] was six years old at this time between the dates of June 1st, 2013 and July 25th of 2013 Jeffrey Henry was staying with C.P.'s grandmother, Bernadette Gross.  This was at 4908 Billy Ray North.  That's here in Shelby County.  The defendant took C.P. into the bathroom of the trailer, ran a bath for her and got into the bathtub with her.  While in the bathtub, the defendant proceeded to rub C.P.'s vagina as she described in a circular motion.  Someone figured out in the house that they were alone in the bathroom together, tried to open the door and it was locked.  The defendant admitted that he was wrong in doing this.
>
> In Case Number 13-06324, between the dates of June 1st, 2013 and August 5th of 2013, five year old M.C. and seven year old K.C. were – just their mother was at work and they would stay with their father, Mitchell Cohen who also lived with Bernadette Gross, his mother, which will be the victim's grandmother, at 4908 Billy Ray North.  That's here in Shelby County.
>
> Mr. Henry took K.C., the seven year old female, to the bathroom in the trailer and she disclosed that he put his finger inside of her private part, her vagina.  Now, M.C., her sister, who's five years old said that the defendant didn't hurt her like he hurt her sister, K.C.  He just rubbed her vagina and would put glitter on it.
>
> All of these events occurred in Shelby County, Tennessee.

(ECF No. 10-8 at PageID 257–58.)

The TCCA opinion on post-conviction appeal summarized Henry's ineffective assistance of counsel claims, the evidence presented at the post-conviction hearing, and the post-conviction trial court's decision:

> Petitioner subsequently filed a timely petition for post-conviction relief.  In the petition, he argued that he received ineffective assistance of counsel, that his plea was unknowing and involuntary, and additional issues which were not appealed.  The post-conviction court appointed counsel and held a hearing on the petition for post-conviction relief.

---

[1] Because the victims are children, this Court will refer to them by their initials.

Trial counsel testified that he represented Petitioner for approximately ten months on the two indictments in this case. Trial counsel stated that he and Petitioner discussed everything "from [Petitioner's] living situation, to [Petitioner's] parents, to . . . the facts alleged." Trial counsel said that he and Petitioner "had a solid rapport." During the course of his representation, trial counsel discussed with Petitioner potential convictions and the sentencing exposure associated with each potential conviction. Trial counsel told Petitioner that it was possible that he could face between 75 and 120 years in prison. Additionally, trial counsel explained that he reviewed the discovery with Petitioner and conducted an investigation into the matter. Trial counsel also stated that he considered hiring an expert in child psychology if the case were to go to trial. Trial counsel felt that there was a "significant danger" if the first indictment went to trial and characterized it as "a stronger . . . case" for the State. Even though trial counsel thought that the case on the second indictment "wasn't that strong" for the State, he stated that "it could be dangerous to the client." Trial counsel believed that Petitioner could have received more jail time on a single conviction of child rape at trial on the first indictment than the amount of time Petitioner received under the deal offered by the State.

Trial counsel contemplated filing a motion to suppress a statement pertaining to Petitioner's intoxication at the time of one of the offenses. Ultimately, a motion to suppress was not filed because, in the words of trial counsel, "we decided to see if we could shoot for an offer[.]" Trial counsel was unable to remember if he prepared anything for the potential filing of a motion to suppress. However, trial counsel said that one reason that he did not file a motion to suppress was that he was concerned that it would stifle negotiations with the State.

The State made plea offers which trial counsel communicated to Petitioner. Trial counsel indicated that he believed the initial offer from the State was 35 years at 100% to run concurrently for each charge of rape of a child. Later, the State offered Petitioner an out-of-range sentence of 20 years at 100% for each charge of aggravated sexual battery. The sentences would run concurrently with each other. According to trial counsel, Petitioner was initially hesitant to take the deal but eventually decided to plead. Trial counsel gave the following description of his discussion with Petitioner:

> [I]n the end, we looked at it and we looked at what we were potentially facing and if he were to get convicted, he may never see the outside again. And the offer that we did receive was three counts of the lesser charge on all indictments all to . . . be served concurrently for a total of 20 years. Now, that was outside his range. We discussed that that was higher than what he would have been facing as a normal first-time offender if it was not a negotiated plea. We back and forthed [sic] it about whether or not we should go to trial and I believe that we came to an agreement and it did not seem to sit well with [Petitioner]. This is never going to be something that he's going to be happy to take. It was tough the whole way through. But in the end,

5

we did choose to make that plea, we did have that plea, and that was our decision.

Trial counsel recounted explaining the details of a best interest plea, otherwise known as an *Alford* plea, to Petitioner. Trial counsel pointed out that Petitioner never made an admission of guilt and that Petitioner was very concerned that it was made known that he was not admitting guilt. Additionally, trial counsel testified that he discussed the appeals process with Petitioner and that he explained to Petitioner that his only other remedy after the plea would be post-conviction relief.

Petitioner testified that he had struggled with alcoholism at the time of the offenses and that he thought that he attempted to express that to trial counsel. However, Petitioner could not recall if he specifically discussed his mental health history with trial counsel. Petitioner claimed that, at the time of the post-conviction hearing, he had realized that he suffered from memory loss during the time that trial counsel represented him. Petitioner stated, "I have been told by professionals that it's a PTSD that went into manic depression that was enhanced with my alcoholism and my head injuries." However, Petitioner was unsure if this was a proper diagnosis. Petitioner admitted that he discussed some of his condition with trial counsel, but Petitioner didn't realize the full extent of his condition.

Petitioner admitted that he told trial counsel that he "had been drinking from sun up" on the day of the offense, but it is unclear from the record as to which offense Petitioner is referring to. Petitioner also recounted talking to trial counsel about the filing of motions and discussing the plea offers extended to Petitioner. Petitioner denied ever going over the discovery with trial counsel. Petitioner stated that the discussions with trial counsel were one sided. Petitioner indicated that he expressed interest in speaking to the victim's aunt, but as far as Petitioner was aware, trial counsel never made contact with that individual. Petitioner also testified that he wanted trial counsel to look into the mental health history of one of the victims. Petitioner further stated that he was unaware of many of the actions that trial counsel testified that he performed during his investigation of the case.

With regard to his sentence, Petitioner stated that he understood that he would be pleading outside of his range. However, he testified that at the time he made the plea, he did not fully understand the sentencing process and how enhancement factors increase a sentence within a given range. Petitioner admitted that he was "terrified of trial." He said, "[T]he only thing I was getting out of [trial counsel] was there was basically no chance we would win a trial and I would end up anywhere between 40 and 60 years." Petitioner considered that to be "a life sentence" because he was 48 years old at the time of the post-conviction hearing.

Petitioner asserted that trial counsel explained that "the chances of a verdict in [Petitioner's] favor were slim" and that "[Petitioner] would be able to appeal[.]" Petitioner said, "In my understanding, from what I was gathering from [trial counsel] is that I would have a [better]

6

chance of a lesser sentence in the appeals process than trial." He continued, "So, I took [that] as . . . meaning that I should sign the plea . . . instead of risking a trial situation." Petitioner indicated that it was his understanding that he would be able to maintain his innocence by entering a best interest plea pursuant to *Alford* and raise the issue of his innocence later on appeal. On cross-examination, Petitioner could not recall many of the details of his plea hearing. Specifically, Petitioner did not recall the trial court telling him that he would be giving up his right to an appeal by entering a guilty plea.

In its written order denying post-conviction relief, the post-conviction court found trial counsel's testimony to be "very credible." Conversely, the post-conviction court found that Petitioner was "not credible." In addition, the post-conviction court found that Petitioner "presented no testimony or evidence that establishes that trial counsel's efforts fell below the standard of competent counsel. [Petitioner] offered nothing, except generalizations, concerning errors by trial counsel." The post-conviction court also found that "the recommendations made by [trial counsel] were based on sound reasons after a full investigation of the case and a consideration of all options available to [Petitioner]." Furthermore, the post-conviction court found that Petitioner "freely, voluntarily, and intelligently waived his rights" and found that Petitioner "entered his guilty plea after competent advice from his counsel, after a complete investigation of all the facts, [and] after a thorough examination by the [trial court] wherein [Petitioner] stated under oath that he understood his rights and the nature of the guilty plea."

*Henry v. State*, 2018 WL 522435, at *1–*3.

## IV.   LEGAL STANDARDS

Federal courts may issue habeas corpus relief to persons in state custody under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### A.   Exhaustion and Procedural Default

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts under 28 U.S.C. § 2254(b)

and (c).  *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  The petitioner must "fairly present"[2] each claim to all levels of state court review, up to and including the state's highest court on discretionary review, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy, *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999).  Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court to "be deemed to have exhausted all available state remedies."  *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); *see Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

The procedural default doctrine is ancillary to the exhaustion requirement.  *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine).  Where the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the procedural default doctrine ordinarily bars a petitioner from seeking federal habeas review.  *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment") (internal quotation marks and citation omitted)).[3]  In

---

[2] For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted).  Nor is it enough to make a general appeal to a broad constitutional guarantee.  *See Gray v. Netherland*, 518 U.S. 152, 163 (1996).

[3] The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits.  *See Walker*, 562 U.S. at 315.  A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed."  *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. at 60–61 (2009)).  "A discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review . . . even if the appropriate exercise

general, a federal court "may only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule." *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013). Once a petitioner's claim has been procedurally defaulted at the state level, the petitioner must show cause to excuse his failure to present the claim and actual prejudice stemming from the constitutional violation or that a failure to review the claim will result in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 320–21 (1995); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The latter showing requires a petitioner to establish that a constitutional error has likely resulted in the conviction of a person who is actually innocent of the crime. *Schlup*, 513 U.S. at 321; *see also House v. Bell*, 547 U.S. 518, 536–39 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

**B.    Merits Review**

Pursuant to Section 2254(d), where a claim has been adjudicated in state courts on the merits, a habeas petition should only be granted if the resolution of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Petitioner carries the burden of proof on this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

---

of discretion may permit consideration of a federal claim in some cases but not others." *Id.* (quoting *Kindler*, 558 U.S. at 54.) (internal quotation marks and citations omitted).

Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *See Cullen*, 563 U.S. at 182. A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 412–13. The state court's application of clearly established federal law must be "objectively unreasonable" for the writ to issue. *Id.* at 409. The writ may not issue merely because the habeas court, "in its independent judgment," determines that the "state court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411).

Minimal case law addresses whether, under § 2254(d)(2), a decision relied on "an unreasonable determination of the facts." In *Wood v. Allen*, 558 U.S. 290, 301 (2010), the Supreme Court held that a state-court factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion.[4] In *Rice v. Collins*, 546 U.S. 333 (2006), the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual

---

[4] In *Wood*, the Supreme Court endeavored to resolve whether, to satisfy § 2254(d)(2), "a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." *Wood*, 558 U.S. at 299. The Court found it unnecessary to reach that issue, and left it open "for another day." *Id.* at 300–01, 303 (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006), in which the Court recognized that it is unsettled whether there are some factual disputes to which § 2254(e)(1) is inapplicable).

finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice*, 546 U.S. at 341–42.

The Sixth Circuit has described the § 2254(d)(2) standard as "demanding but not insatiable" and has emphasized that, pursuant to § 2254(e)(1), the state court factual determination is presumed to be correct absent clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010). A state court adjudication will not be overturned on factual grounds unless objectively unreasonable considering the evidence presented during the state court proceeding. *Id.*; *see also Hudson v. Lafler*, 421 F. App'x 619, 624 (6th Cir. 2011) (same).

### C.   Ineffective Assistance

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on this claim, a movant must demonstrate two elements: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Recently, the Sixth Circuit opined that this standard is "even more difficult to meet in habeas cases, where the review that applies to *Strickland* claims is 'doubly deferential.'" *Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* (internal quotation marks and citation omitted).

11

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.[5] "A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 687, 693–94); *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out'" a more favorable outcome to prevail. "Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

The deference accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when reviewing an ineffective assistance claim:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at 123, 129 S. Ct. at 1420 [(2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of

---

[5] If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

> equating unreasonableness under *Strickland* with unreasonableness under §
> 2254(d). When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any reasonable argument that
> counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105.

A criminal defendant is entitled to the effective assistance of counsel on direct appeal.

*Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The failure to raise a nonfrivolous issue on appeal does

not constitute *per se* ineffective assistance of counsel, as "[t]his process of winnowing out weaker

arguments on appeal and focusing on those more likely to prevail, far from being evidence of

incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527,

536 (1986) (internal quotation marks and citation omitted). Claims of ineffective assistance of

appellate counsel are evaluated using the *Strickland* standards. *Smith v. Robbins*, 528 U.S. 259,

285–86 (2000) (applying *Strickland* to claim that appellate counsel rendered ineffective assistance

by failing to file a merits brief); *Murray*, 477 U.S. at 535–36 (failure to raise issue on appeal). To

establish that appellate counsel was ineffective, a prisoner:

> [M]ust first show that his counsel was objectively unreasonable in failing to find
> arguable issues to appeal—that is, that counsel unreasonably failed to discover
> nonfrivolous issues and to file a merits brief raising them. If [the prisoner] succeeds
> in such a showing, he then has the burden of demonstrating prejudice. That is, he
> must show a reasonable probability that, but for his counsel's unreasonable failure
> to file a merits brief, he would have prevailed on his appeal.

*Robbins*, 528 U.S. at 285 (citation omitted).[6]

---

[6] The Sixth Circuit has identified a nonexclusive list of factors to consider when assessing
claims of ineffective assistance of appellate counsel:

1. Were the omitted issues "significant and obvious?"
2. Was there arguably contrary authority on the omitted issues?
3. Were the omitted issues clearly stronger than those presented?
4. Were the omitted issues objected to at trial?
5. Were the trial court's rulings subject to deference on appeal?

13

An appellate counsel's ability to choose those arguments that are more likely to succeed is "the hallmark of effective appellate advocacy." *Matthews v. Parker*, 651 F.3d 489, 523 (6th Cir. 2011) (quoting *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003)).  It is difficult to show that appellate counsel was deficient for raising one issue, rather than another, on appeal. *See id.*  "In such cases, the petitioner must demonstrate that the issue not presented was clearly stronger than issues that counsel did present." *Id.*  Defendant must show that "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

"There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752 (internal citations omitted).  Attorney error cannot constitute "cause" for a procedural default "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Id.* at 753 (internal quotation marks omitted).  Where the State has no constitutional obligation to ensure that a prisoner is represented by competent counsel, the petitioner bears the risk of attorney error. *Id.* at 754.

---

6.  Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7.  What was the appellate counsel's level of experience and expertise?
8.  Did the petitioner and appellate counsel meet and go over possible issues?
9.  Is there evidence that counsel reviewed all the facts?
10.  Were the omitted issues dealt with in other assignments of error?
11.  Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006) (citation omitted).

14

In 2012, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), which recognized a narrow exception to the rule in *Coleman*, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding . . . ." *Martinez*, 566 U.S. at 17. In such cases, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance [of counsel] at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* The Supreme Court also emphasized that:

> [t]he rule of *Coleman* governs in all but the limited circumstances recognized here. . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id.* The requirements that must be satisfied to excuse a procedural default under *Martinez* are:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (emphasis and alterations in original).

*Martinez* considered an Arizona law that did not permit ineffective assistance claims to be raised on direct appeal. *Martinez*, 566 U.S. at 4. In the Supreme Court's subsequent decision in *Trevino*, 569 U.S. at 429, the Court extended its holding in *Martinez* to states in which a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." *Trevino* modified the fourth *Martinez* requirement for overcoming a procedural default. *Martinez* and *Trevino* apply to Tennessee prisoners. *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014).

15

## V.       ANALYSIS OF PETITIONER'S CLAIMS

### A.       Exhausted Claims

| | |
|---|---|
| **Issue 1:** | **Trial counsel provided ineffective assistance by failing to communicate a defense strategy.  (Pet., ECF No. 1 at PageID 5.)** |
| **Issue 3:** | **Trial counsel provided ineffective assistance by failing to fully explain Petitioner's guilty plea. (*Id.*)** |
| **Issue 5:** | **Trial counsel provided ineffective assistance by failing to explain the evidence to Petitioner. (*Id.*)** |
| **Issue 6:** | **Trial counsel provided ineffective assistance by failing to fully explain Petitioner's guilty plea. (*Id.*)** |

Petitioner contends that the TCCA's "adjudication of his claims of ineffective assistance was contrary to or involved an unreasonable application of the clearly established federal law established in *Boykin* and was not merely erroneous but objectively unreasonable."[7] (*Id.*)  He also contends that the adjudication was contrary to *Strickland v. Washington*, *Hill v. Lockhart*, and *North Carolina v. Alford*.  (*Id.* at PageID 13.)   Petitioner contends that it was "objectively unreasonable for the State court to have credited trial counsel as being 'very credible,'" when the State court record fails to reflect any evidence to have supported this credibility determination.  (*Id.* at PageID 16.)  Petitioner alleges that, to the contrary, his "thorough and coherent account of his interpretation of what he was informed and believed to have been entering into with regards to the plea, holds together and compels the conclusion that he testified credible, despite minor flaws that emerged during the testimony."  (*Id.* at PageID 17.)

---

[7] Petitioner's citations to *Boykin v. Alabama* and *North Carolina v. Alford* are misplaced. Those federal cases were utilized by the TCCA to determine whether Henry's guilty plea was knowing and voluntary.  Henry has not raised a freestanding claim that his plea was unknowing and involuntary in this habeas petition.

16

Respondent replies that the decision of the TCCA "was not an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. (ECF No. 11 at PageID 447.) Respondent contends that this Court should defer to the credibility findings of the TCCA, "since no 'powerful' evidence requires the conclusion that the trial court's findings were unreasonable." (*Id.* at PageID 449) (citations omitted.)

After identifying the proper federal standard to analyze Petitioner's claims of ineffective assistance under *Strickland* and *Henry v. State*, 2018 WL 522435, at *4, the TCCA reviewed these claims and opined:

> We conclude that the evidence does not preponderate against the post-conviction court's findings. Trial counsel recounted an adequate investigation of the facts, adequate communication with Petitioner, and adequate negotiations with the State. Petitioner's inability to remember or his lack of knowledge of the extent of trial counsel's actions does not render those actions deficient. Additionally, Petitioner's argument that trial counsel was ineffective because he advised Petitioner "that he would have a better chance of a lesser sentence on appeal" is undermined by the fact that Petitioner expressly stated during the plea colloquy that he understood that he was waiving his right to an appeal. Petitioner's argument is further undermined by the post-conviction court's findings that trial counsel was "very credible" and Petitioner was "not credible." Petitioner has failed to show that trial counsel was deficient. Additionally, Petitioner has failed to prove that, but for any error by trial counsel, he would not have pleaded guilty and would have insisted on going to trial. Rather, Petitioner stated that he was "terrified of trial."

*Henry v. State*, 2018 WL 522435, at *4.

Petitioner does not explain how the TCCA's decision was contrary to *Strickland*. To evaluate an ineffective assistance claim, a court must "assess counsel's performance based on counsel's perspective at the time, considering all the circumstances, rather than in the harsh light of hindsight." *Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) (internal quotation marks and citations omitted), *cert. denied*, 139 S. Ct. 1573 (2019).

Title 28 U.S.C. § 2254(d) does not "give federal habeas courts license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by

them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (applying pre-AEDPA version of § 2254(d)). "Even if reasonable minds reviewing the record might disagree about the evidence, on habeas review that does not suffice to supersede the state court's credibility determination." *Tharpe v. Sellers*, 138 S. Ct. 545, 553 (2018) (internal quotation marks and brackets omitted). Nonetheless, "[d]eference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

At the post-conviction hearing, trial counsel had no difficulty recalling his representation of Petitioner, his discussions with Petitioner about the discovery materials, the charges against Henry, the possible sentences, the investigation, the possibility of suppression motions, the need for expert witnesses, the strength of the cases, the plea offers, and the plea process. (ECF No. 10-9 at PageID 328–32, 336–38.) Trial counsel testified that, initially, no motion to suppress was filed because he and Henry decided to "shoot for an offer" but later, once they "decided that a trial would potentially be dangerous . . . we tried to see if there were any other options that would be beneficial." (*Id.* at PageID 332–33.) Trial counsel testified that he was worried about Henry's sentence exposure and that he "did not feel good about that first case and the exposure definitely warranted looking into an offer and seeing if we could seek an offer." (*Id.* at PageID 334.) Counsel testified that he was not aware of any history of alcohol or substance abuse but he and Henry discussed whether Henry had been drinking and "it was written in the police report that he was intoxicated at the time." (*Id.* at PageID 334.) Counsel stated that he had no concerns about Henry's mental health history or ability to know and understand what was going on. (*Id.* at PageID 335–36.) Specifically, trial counsel testified that Henry had no difficulty understanding the concepts

18

but the "severity of the situation caused him to have questions about things . . . he talked and communicated on rational basis." (*Id.* at PageID 336.)

Petitioner Henry testified during the post-conviction hearing that he had a mental health history but provided no records to support his testimony. (*Id.* at PageID 348–49.) Petitioner testified that he now realized that he suffered from number of problems but could not say whether he knew about them during the pendency of his cases or whether he discussed them with trial counsel. (*Id.*) Petitioner admitted that he and counsel discussed the offers extended by the state. (*Id.* at PageID 350–51, 370.) Petitioner testified that he intended to plead guilty, take an appeal, and seek a lower sentence. (*Id.* at PageID 350–51.) Petitioner did not remember anything the judge discussed with him during the guilty plea hearing. (*Id.* at PageID 366–70.) He finally admitted that he knew he "would have a right to a post-conviction appeal" and that he "would have an avenue to still fight." (*Id.* at PageID 369.) Petitioner admitted the character witness that he identified for trial counsel could not be found. (*Id.* at PageID 355.) He testified that he wanted the mental history of the victim investigated because he heard rumors that there may be something out there that could be useful, although he did not know whether the rumors were true. (*Id.* at 356–57, 365.) Petitioner admitted that he originally set the case for trial but wanted to continue negotiating for a better offer because he "was terrified of trial." (*Id.* at PageID 358.)

There is no basis here to conclude that the TCCA's factual finding that Henry was not a credible witness was objectively unreasonable. Henry has failed to rebut the TCCA's determination that counsel's performance was not deficient. Petitioner has not satisfied his burden to show that the decision was objectively unreasonable and fails to refute the presumption of correctness accorded the state court's factual determination. A state court's factual findings are

entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary.  28 U.S.C. §§ 2254(d)(2), 2254(e)(1).  Issues One, Three, Five, and Six are **DENIED**.

### B.   Unexhausted and Defaulted Claims

> **Issue 2:**       **Trial counsel provided ineffective assistance by failing to challenge Petitioner's statement to police. (ECF No. 1 at PageID 5.)**

Petitioner contends that trial counsel provided ineffective assistance by failing to file a motion to suppress his statement to the police.  (*Id.*)  Respondent replies that, although Petitioner presented this claim to the post-conviction trial court, he failed to raise it in the post-conviction appeal and it is procedurally defaulted.  (ECF No. 11 at PageID 446–47.)

This claim was raised by post-conviction counsel in the second amended petition for post-conviction relief.  (ECF No. 10-7 at PageID 229.)  Trial counsel testified about the issue at the post-conviction hearing.  (ECF No. 10-9 at PageID 332–33, 340, 345.)  The issue was not raised in Petitioner's argument in the post-conviction appeal.  (ECF No. 10-10 at PageID 382–84.) Petitioner Henry has not properly exhausted this claim and it is therefore procedurally defaulted as he has no avenue remaining for presentation of the claim given the state statute of limitations on state post-conviction relief.  This procedural default operates as a complete and independent procedural bar to federal habeas review of Issue Two.

*Martinez* and *Trevino* cannot excuse Petitioner's default of Issue 2.  *Martinez* does not encompass claims that post-conviction appellate counsel was ineffective.  *See Martinez*, 566 U.S. at 15. ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial.")  The procedural default of Issue Two occurred when post-conviction counsel exercised his discretion to limit the brief to the TCCA to the strongest

argument.  Counsel has no duty to raise frivolous issues and may exercise his discretion to limit a brief to the TCCA to the strongest argument.  Henry has not presented any evidence that requires review of Issue Two to prevent a fundamental miscarriage of justice.  *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986).  Issue Two is barred by procedural default and is **DENIED**.

**<u>Issue 4:</u>**        **Trial counsel provided ineffective assistance by coercing Petitioner to enter his guilty plea.  (ECF No. 1 at PageID 5.)**

Petitioner contends that counsel coerced Petitioner to enter the guilty plea.  (*Id.*) Respondent replies that this claim was never raised in state court and is procedurally defaulted from review.  (ECF No. 11 at PageID 446.)

This claim was not raised in the pro se post-conviction petition, the amended petition, or the second amended petition.  (ECF No. 10-7 at PageID 189–202; ECF No. 10-7 at PageID 215–23; ECF No. 10-7 at PageID 224–32.)  The post-conviction hearing did not elicit testimony of coercion.  (ECF No. 10-9.)  Petitioner has not provided any factual basis in the habeas petition to support this claim.  (ECF No. 1 at PageID 13–20.)

Counsel's testimony at the post-conviction hearing about the strength of one of the cases, Henry's potential sentence exposure, and their mutual decision to negotiate an offer undercuts this allegation.  (ECF No. 10-9 at PageID 332–34.)  Petitioner's testimony that he "was terrified of trial" also demonstrates that his plea was voluntary and not coerced.  (*Id.* at PageID 358.)  Petitioner Henry cannot establish deficient performance because this claim is "belied by the record".  *Goff v. Bagley*, 601 F.3d 445, 464 n. 7 (6th Cir. 2010) (an ineffective assistance of counsel claim is meritless where the facts on which the claim is based are "belied by the record.").  Consequently, Henry has failed to establish that this issue was substantial under *Martinez* and Petitioner has not

21

satisfied the requirement to overcome the procedural default.  Therefore, Issue Four is barred by procedural default and is **DENIED**.

<blockquote>

**<u>Issue 7</u>:**       **Petitioner's Due Process rights were violated when the State failed to turn over exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  (ECF No. 1 at PageID 4, 22.)**

</blockquote>

Petitioner contends that, after the post-conviction evidentiary hearing on his ineffective assistance of trial counsel claim, he discovered new evidence in an email about the six-year-old victim, K.P., sent to Assistant District Attorney General Jennifer Nichols.  (*Id.* at PageID 22.)  He asserts that the email contained numerous assertions that were unknown to him at the time he waived his rights and pled guilty.  (*Id.* at PageID 28.)  Petitioner alleges that the email is considered "fact work-product," which is evidence that the district attorney had knowledge of evidence favorable to the defense and a duty to disclose that evidence under *Brady*.  (*Id.* at PageID 22.)

Respondent has replied that this claim is procedurally defaulted in this proceeding.  (ECF No. 11 at PageID 450.)  Petitioner has conceded in the habeas petition that the claim is different from the claim raised in his writ of coram nobis and is defaulted, but he contends that *Martinez* excuses the default of the claim.  (ECF No. 1 at PageID 37; ECF No. 15-3 at PageID 494.)

In *Brady v. Maryland*, the Supreme Court held that the Due Process Clause is violated when prosecutors withhold from the defense evidence favorable to the accused where the evidence is material either to guilt or punishment. 373 U.S. at 87.  This duty to disclose "is applicable even though there has been no request by the accused . . . , and . . . the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citation omitted).

A *Brady* violation has three components:  (1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must

have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have

ensued." *Id.* at 281–82. A showing of prejudice requires that the suppressed evidence be material.

Evidence is "material" for *Brady* purposes if "there is a reasonable probability that the result of the

trial would have been different if the suppressed [evidence] had been disclosed to the defense." *Id.*

at 289 (internal quotation marks omitted); *see United States v. Bagley*, 473 U.S. 667, 682 (1985)

("The evidence is material only if there is a reasonable probability that, had the evidence been

disclosed to the defense the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome.") (internal quotation

marks omitted). In the context of a guilty plea, a "petitioner may establish prejudice by showing

that there is a reasonable probability that, but for the non-disclosure of evidence, 'he would not

have [entered his plea] and would have insisted on going to trial.'" *Fautenberry v. Mitchell*, 515

F.3d 614, 629 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (alteration in

original)).

> [A] showing of materiality does not require demonstration by a preponderance that
> disclosure of the suppressed evidence would have resulted ultimately in the
> defendant's acquittal (whether based on the presence of reasonable doubt or
> acceptance of an explanation for the crime that does not inculpate the defendant).
> *Bagley*'s touchstone of materiality is a reasonable probability of a different result,
> and the adjective is important. The question is not whether the defendant would
> more likely than not have received a different verdict with the evidence, but whether
> in its absence he received a fair trial, understood as a trial resulting in a verdict
> worthy of confidence. A "reasonable probability" of a different result is accordingly
> shown when the government's evidentiary suppression undermines confidence in
> the outcome of the trial.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (internal quotation marks and citations omitted). This

standard is not satisfied by a showing that the suppressed evidence "might" have changed the

outcome of the trial. *Strickler*, 527 U.S. at 289; *see also id.* at 291 (a petitioner must establish a

reasonable probability, rather than a reasonable possibility, of a different result). This standard is

similar to the "prejudice" component of an ineffective assistance of counsel claim.  *Kyles*, 514 U.S. at 436; *Bagley*, 473 U.S. at 682.

The Supreme Court has been clear that the information prosecutors must disclose at trial under *Brady* is not necessarily information to which a defendant is entitled during plea deliberations under the same.  In *United States v. Ruiz*, 536 U.S. 622 (2002), the Court held that impeachment information that might be subject to *Brady*'s disclosure rule at trial need not be disclosed to render a plea knowing and voluntary.  That was because "impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary."  *Id.* at 629.  Though acknowledging that more information would allow a defendant to make a "wiser" decision, the Court stated that the "Constitution does not require the prosecutor to share all useful information with the defendant."  *Id.*  *Ruiz* does not conclusively foreclose Henry's argument here, since *Ruiz* explicitly addressed only impeachment (not exculpatory) evidence.  *Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir. 2014) ("We have not yet had occasion to determine whether *Ruiz* applies to exculpatory *Brady* material, a question that has caused some disagreement among our sister circuits.").  However, other Supreme Court precedent clearly does.

For instance, Henry contends that *Martinez* excuses the procedural default of this claim. (Pet., ECF No. 1 at PageID 37.)   The Supreme Court held in *Martinez*, that, in certain circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," but the *Martinez* exception is strictly limited to claims of ineffective assistance of trial counsel:

> We will assume that the Supreme Court meant exactly what it wrote:  "*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true *except* as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial."

*Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (quoting *Martinez*, 566 U.S. at 16) (emphasis in *Hodges*); *Shinn v. Ramirez*, 142 S. Ct. 1718, 1737 (2022) ("This Court's holding in *Martinez* addressed only one kind of claim: ineffective assistance of trial counsel . . . . We limited our holding in that way to reflect our 'equitable judgment' that trial-ineffective-assistance claims are uniquely important.")  Because Issue Seven is not a claim of ineffective assistance of trial counsel, *Martinez* cannot establish cause for its default.  The procedural default doctrine bars this Court's consideration of this claim.  Therefore, Issue Seven is **DENIED**.

The issues raised in this Petition are without merit and procedurally defaulted.  Therefore, the petition is **DISMISSED WITH PREJUDICE**.

## VI.   <u>APPELLATE ISSUES</u>

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003).  The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner.  Rule 11, Rules Governing Section 2254 Cases in the United States District Courts.  A petitioner may not take an appeal unless a circuit or district judge issues a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2)-(3).  A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (holding a prisoner must demonstrate that reasonable jurists could disagree with the district

court's resolution of his constitutional claims or that the issues presented warrant encouragement to proceed further).

A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Slack*, 537 U.S. at 337).

Here, there can be no question that the claims in this Petition are procedurally defaulted and without merit. Because any appeal by Petitioner on the issues raised in this petition would also lack merit, the Court **DENIES** a certificate of appealability.

In this case for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith and leave to appeal *in forma pauperis* is **DENIED**.[8]

> **IT IS SO ORDERED**, this 28th day of July 2022.

> *s/ Mark Norris*
> MARK S. NORRIS
> UNITED STATES DISTRICT JUDGE

---

[8] Should Petitioner file a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).